## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GOODNIGHT TERMINAL SERVICES, INC., et al.** | § § | **PLAINTIFFS** |
| **v.** | § § | **Civil No. 1:24-cv-306-HSO-BWR** |
| **CLAUDIO MANISSERO, et al.** | § § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CLAUDIO MANISSERO AND JEFF KOEBRICK'S MOTION [5] TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ALL DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Claudio Manissero ("Manissero"), Jeff Koebrick ("Koebrick"), and ASG Chemical Holdings, LLC ("ASG") seek dismissal of Plaintiffs Goodnight Terminal Services, Inc. ("GTS"), Gary Mackey ("Mackey"), and William Buckley's ("Buckley") claims against Manissero and Koebrick for lack of personal jurisdiction, and their claims against all Defendants for failure to state a claim and for improper venue. *See* Mem. [6]. The Court finds that Manissero and Koebrick should be dismissed without prejudice for lack of personal jurisdiction, and that the remaining claims against ASG should be dismissed without prejudice for failure to state a claim because the Complaint [1-1] constitutes an impermissible shotgun pleading. Plaintiffs will have twenty-one days from the date of this Order to file an amended complaint which adequately states a claim against Defendant ASG, should they choose to do so. Should Plaintiffs fail to file an amended complaint, the Court will enter a final judgment of dismissal in this matter.

### I. BACKGROUND

Plaintiff GTS is a Mississippi corporation which "provide[s] transload

services, warehousing, liquid bulk services, dry bulk services, blending, logistics and special freight services, and rail car cleaning and repairs." Compl. [1-1] at 5. Plaintiff Mackey is the Chief Executive Officer and a co-owner of GTS, *id.*, and Plaintiff Buckley is a General Manager at Bisley International, LLC ("Bisley")—a material supply company which is not a party to this lawsuit, *id.* at 12. Defendant ASG is a Florida limited liability company which at one time or another has allegedly conducted business with Plaintiffs and with Bisley. *See* Notice [1] at 3; Compl. [1-1]. It is unclear from the pleadings exactly what services ASG provides. Defendants Koebrick and Manissero, both Florida citizens, each hold an ownership interest in ASG and appear to be employees of the company, although the specifics of their roles are somewhat unclear. *See* Doc. [20] (explaining that ASG "has two members, Mr. Koebrick and Chemcognition, LLC . . . . Chem. Co. is a privately held North Carolina limited liability company and it has only two members: Mr. Manissero and his wife . . . both domiciled in the State of Florida.").

Plaintiffs' Complaint [1-1] alleges generally that Defendants "have been involved in an elaborate scheme of inventory theft, corporate bribery, kickbacks, embezzlement, price fixing, fraud, conspiracy, and/or racketeering." *Id.* at 1. Plaintiffs claim that in 2019, at "Defendants'" request, "Plaintiffs GTS and Mackey agreed to perform trucking and other services for Defendants and Bisley." Compl. [1-1] at 6. After a business relationship was established, "Defendants" allegedly began to solicit "kickbacks" from Plaintiffs GTS and Mackey, *id.*, fraudulently induced GTS to expand its operations to Houston, Texas, *id.* at 7, stole Bisley's

inventory from GTS's warehouse, *id.* at 8, "directly compet[ed] with Bisley . . . even while Bisley was compensating Defendants for certain sales," *id.* at 12, paid Bisley employees under the table, *id.* at 13, and slandered Plaintiffs in an attempt to destroy their relationships with customers, *id.* at 17.    Based upon this conduct, the Complaint [1-1] advances eight separate causes of action, each against all Defendants: (1) tortious interference with contractual relations (Count II); (2) tortious interference with business relations (Count III); (3) defamation and slander (Count IV); (4) fraud (Count V); (5) fraudulent inducement (Count VI); (6) civil conspiracy (Count VII); (7) breach of fiduciary duty (Count VIII); and (8) unjust enrichment (Count IX).[1]  *See id.*

Defendants' Motion [5] to Dismiss asks this Court to dismiss the claims against Koebrick and Manissero (the "Individual Defendants") for lack of personal jurisdiction, and to dismiss the entire lawsuit for failure to state a claim and for improper venue.    *See* Mem. [6] at 1.    Regarding personal jurisdiction, the Individual Defendants argue that: (1) they are not subject to this Court's general jurisdiction, *id.* at 9; (2) they are shielded by the Fiduciary-Shield Doctrine, *id.* at 10; (3) Plaintiffs' Complaint is an improper "shotgun pleading" which does not clearly identify which acts are attributable to each Defendant, *id.* at 11; and (4) exercising personal jurisdiction would not comport with Mississippi's long-arm

---

[1] The Complaint [1-1] actually purports to contain nine separate causes of action, but Count I, entitled "preliminary and injunctive relief," merely seeks a separate form of relief; it is not a standalone cause of action.    *See* Compl. [1-1] at 18; *see also Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 229 (E.D. La. 2012) (collecting cases which hold that "[g]enerally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims.").

statute or principles of due process, *id.* at 13-27.   All Defendants further assert that Plaintiffs' claims should be dismissed for failure to state a claim and for improper venue because, among other things, the Complaint [1-1] constitutes a shotgun pleading.   *Id.*

In Response [11], Plaintiffs argue that personal jurisdiction exists over the Individual Defendants because: (1) the Fiduciary-Shield Doctrine does not apply to individual tortious conduct, Resp. [11] at 11; and (2) the exercise of personal jurisdiction would comport with the State's long-arm statute and principles of due process, *id.* at 12-23.   Plaintiffs also maintain that they have stated a claim upon which relief can be granted, *see id.* at 24, and that venue is proper in this forum, *id.* at 28.

## II.   DISCUSSION

### A.   Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### 1.   Relevant Legal Authority

### a.   Personal Jurisdiction

A court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) if it finds that it lacks personal jurisdiction over a defendant.   *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).   Where no evidentiary hearing is held, "the party seeking to invoke the power of the court . . . bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (quotation omitted).   To determine whether a prima facie case exists, this

Court must accept as true the Complaint's uncontroverted allegations and resolve in Plaintiffs' favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other submissions. *Id.* at 219-20. But the Court is not required to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state, in this case Mississippi, allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). As for the first requirement,

> Mississippi's long-arm statute authorizes personal jurisdiction over a nonresident defendant in three situations: if the defendant (1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in Mississippi; or (3) conducts any business or performs any character of work in Mississippi.

*Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing Miss. Code Ann. § 13-3-57). "Satisfaction of any of the three prongs, be it through contract, tort, or doing business, establishes personal jurisdiction over a nonresident corporation." *Id.* (quoting *Adara Networks Inc. v. Langston*, 301 So. 3d 618, 623 (Miss. 2020)).

If the long-arm statute is satisfied, a court must then consider constitutional limitations on the exercise of personal jurisdiction. *See Seiferth v. Helicopteros*

5

*Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).   "The Due Process Clause 'operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant.'"   *Id.* at 271 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)).   The "constitutional touchstone" of the personal jurisdiction inquiry is "whether the defendant 'purposefully established minimum contacts in the forum State.'"   *Id.* (quoting *Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 108-09 (1987)).

Personal jurisdiction can be general or specific.   *Id.*   "If a defendant's contacts with the forum state are 'continuous and systematic,' a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts."   *Id.* (quoting *Helicopteros*, 466 U.S. at 414-15).   For specific jurisdiction, a court must ask:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* (quotation omitted).   If a plaintiff satisfies the first two requirements, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."   *Id.*

Plaintiffs in this case do not appear to contend, nor is there evidence to support a conclusion, that the Court has general jurisdiction over the Individual Defendants.   *See* Mem. [6] at 9 ("Plaintiffs do not assert that either Mr. Koebrick or Mr. Manissero are subject to general personal jurisdiction in this forum."); Resp.

6

[11] at 4, n.1 ("Plaintiffs concede general jurisdiction is not applicable in this case."). Thus, the Court need only inquire whether it has specific jurisdiction, which "exists where the defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Bryant v. Salvi*, 141 F. App'x 279, 282 (5th Cir. 2005).

The Court must have personal jurisdiction over each Defendant. As such, "[e]ach defendant's contacts with the forum state must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) (explaining that jurisdictional requirements "must be met as to each defendant[.]" (quoting *Rush v. Savchuck*, 444 U.S. 320, 332 (1980))). And in the Fifth Circuit, "specific personal jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth*, 472 F.3d at 274).

b.   The Fiduciary-Shield Doctrine

The Fifth Circuit has recently explained that "because the [Fiduciary-Shield] [D]octrine originates from judicial interpretations of long-arm statutes—not the federal due process clause—the shield exists only to the extent state law recognizes it." *Savoie v. Pritchard*, 122 F.4th 185, 191 (5th Cir. 2024) (quotations omitted). Defendants advance no Mississippi caselaw recognizing the Fiduciary-Shield Doctrine, and the Court has been unable to locate any Mississippi cases expressly

7

recognizing it in the context of a personal jurisdiction analysis.   In any event, the Fifth Circuit has explained that the Doctrine does not prevent an individual "from being held personally liable for [their] own tortious conduct simply because [they are] an officer of a corporation."  *Gen. Retails Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007).   The Individual Defendants are alleged to have committed various torts in their individual capacity, and the Court's personal jurisdiction analysis must focus on their individual contacts with Mississippi, the forum State.   For this reason, even assuming the Fiduciary-Shield Doctrine is recognized by Mississippi courts, the Court need not factor it into its analysis.

2.   Analysis

As a threshold matter, the vast majority of allegations in the Complaint [1-1] are lodged against "Defendants" collectively, making it difficult to discern which allegations, if any, reflect conduct *by the Individual Defendants*, let alone which were aimed at the forum state.   Because the Court must have personal jurisdiction over each Defendant, and because "[e]ach defendant's contacts with the forum state must be assessed individually," *Keeton*, 465 U.S. at 781 n.13, the Court will attempt to discern which portions of the Complaint, if any, allege specific conduct by each of the Individual Defendants aimed at the forum State.

a.   Defendant Manissero

Even assuming the requirements of the Mississippi long-arm statute are met here, Plaintiffs have not carried their burden of establishing that this Court may

exercise personal jurisdiction over Defendant Manissero under the Due Process Clause.   The Complaint [1-1] mentions specific individual conduct on the part of Manissero only a few times, the first being that "[a]fter Plaintiffs GTS and Mackey began operations in Houston, Defendants and Pryde again visited them [Plaintiffs GTS and Mackey].   In that meeting, Defendant Manissero told Plaintiffs GTS and Mackey that he was the other co-owner and manager of Defendant ASG."   Compl. [1-1] at 7-8.   Then, in the next paragraph, Plaintiffs state that "[t]his time, Defendants and Pryde again asked for kickbacks."   *Id.* at 8.   These allegations are insufficient to establish specific personal jurisdiction in this forum because it is unclear whether this meeting even occurred in the State of Mississippi, or how it was connected to Mississippi.   The Complaint [1-1] contains no actual indication where the meeting took place, although it could perhaps be inferred that it occurred in Houston, Texas.   And Defendant Manissero avers in his Affidavit [5-2] that he has not entered Mississippi at any point in the last twenty years, *see* Doc. [5-2] at 1 (Manissero's Affidavit), a fact which Plaintiffs do not appear to contest, *see* Resp. [11] at 14.   The foregoing allegations are insufficient to establish contacts with the forum State sufficient to confer personal jurisdiction over Defendant Manissero.

Plaintiffs' next allegation is that "[a]t the direction of Defendant Manissero, Defendants moved all their inventory (and Bisley's) out of Plaintiffs GTS and Mackey's Hancock County Warehouse and Houston Warehouse."   Compl. [1-1] at 17.   But, even assuming its truth, that is not an allegation of tortious conduct directed at the forum State.   If Defendant Manissero's only contact with the State

of Mississippi was ordering his company's inventory moved out of a warehouse, it cannot be fairly said that, based upon such conduct, he "reasonably anticipate[d] being haled into court" in this forum. *See McFadin*, 587 F.3d at 759. Accordingly, the Court may not exercise personal jurisdiction based upon this factual contention.

Finally, Plaintiffs claim that "at a January 30, 2023, meeting between Defendant Manissero and Plaintiff Mackey, Manissero informed Mackey that Pryde would be coming to work for Defendants." Compl. [1-1] at 11. And later, Plaintiffs allege that "[s]hortly after Plaintiff Buckley had these meetings with Defendant Manissero, Plaintiff Mackey and Manissero met again" and Manissero apparently admitted he was paying Bisley employees under the table. *See id.* at 13. But, again, none of these factual averments specify or even plausibly allege where any of these meetings or conversations took place, or that they occurred in or were directed at the State of Mississippi. This, too, is insufficient to establish minimum contacts with the forum State.

Plaintiffs make various additional allegations about conduct of "Defendants" generally, without specifying which acts were committed by which Defendant. But they allege nothing further about any individual acts committed by Defendant Manissero. In the Court's view, the allegations in the Complaint [1-1] are insufficient to establish that it may exercise personal jurisdiction over Defendant Manissero, and he should be dismissed from this lawsuit without prejudice for lack of personal jurisdiction.

b.     Defendant Koebrick

As with Defendant Manissero, even assuming the requirements of

Mississippi's long-arm statute were satisfied, the Court cannot exercise personal

jurisdiction over Defendant Koebrick under the Due Process Clause.    The

Complaint alleges that, in 2019, Koebrick met with Plaintiffs in GTS's Hancock

County warehouse and later placed several phone calls to Plaintiffs in the State of

Mississippi.    *See* Compl. [1-1] at 5 ("In 2019, Defendant Koebrick contacted Mackey

while Mackey was working at Plaintiffs GTS and Mackey's Hancock County

Warehouse."); *id.* at 6 ("In 2019 . . . Plaintiff Mackey received another phone call

from Defendant Koebrick."); *id.* ("Defendant Koebrick . . . was coming to Plaintiffs

GTS and Mackey's Hancock County Warehouse . . . . Mackey met with Defendant

Koebrick and Pryde and discussed services Plaintiffs GTS and Mackey could

provide at their Hancock County Warehouse.").    Few if any specific facts are offered

as to the nature or content of these contacts or discussions.    But the Complaint [1-

1] does allege that "[a]t Defendants' request, Plaintiffs GTS and Mackey soon began

performing terminal services for Defendants and Bisley at the Hancock County

Warehouse," despite the fact that "Defendant Koebrick omitted the material fact

that he and the other Defendants planned to defraud *Bisley* and steal its business."

*Id.* at 5 (emphasis added).    In light of these alleged contacts with the forum State,

the Court must evaluate each claim against Defendant Koebrick to determine

"whether the plaintiff's cause of action arises out of or results from [Koebrick's]

forum-related contacts[.]"    *McFadin*, 587 F.3d at 759.

11

The first Count alleged against Defendant Koebrick is Count II, which sets forth a claim for tortious interference with contractual relations.   Compl. [1-1] at 19.   As to this claim the Complaint [1-1] merely alleges that, in various ways, "Defendants" collectively "are trying to drive Bisley out of business, which has directly and negatively damaged Plaintiffs."   Compl. [1-1] at 19.   But Bisley is not a party to this case, and Count II does not specify any particular conduct committed by Defendant Koebrick or assert any connection whatsoever between him and Mississippi.   Nor does it explain how any conduct by Defendant Koebrick damaged Plaintiffs.   This is insufficient to state a cause of action arising out of or resulting from Koebrick's aforementioned contacts with Mississippi.

Instead, Plaintiffs claim that "Defendants" (without specifying which) tortiously interfered with their contracts with Bisley, Riteks, and TMD Oilfield Technology.[2]   *See id.* at 19-21.   Nothing is alleged about Koebrick's conduct individually, nor do Plaintiffs explain how any of this collective conduct was directed at the forum State.   Plaintiffs make the assertion that "Defendants have availed themselves of the laws of Mississippi by purposefully and intentionally making their statements intending to harm Plaintiffs in this state and district," *id.* at 22, but, again, these statements are not identified, and the Court is not required to credit this conclusory assertion.   Because Plaintiffs have not carried their burden of establishing sufficient contacts by Defendant Koebrick directed at

---

[2] The Complaint [1-1] indicates that Riteks and TMD Oilfield Technology are two of "Plaintiff Buckley's key clients at Bisley."   Compl. [1-1] at 20-21.

Mississippi to support their claim for tortious interference with contractual relations, it should be dismissed without prejudice as against Defendant Koebrick for lack of personal jurisdiction.

Count III, tortious interference with business relations, must be dismissed as against Koebrick for similar reasons.   The Complaint [1-1] alleges that "Defendants" (without specifying which) "intercepted and diverted Plaintiff Buckley's customers and leads for future sales of products to Defendants."   *Id.* at 23.   Plaintiffs do not specify where any of this conduct occurred or whether it took place in Mississippi or was directed at Mississippi.   And they do not allege any individual conduct by Koebrick at all as to this Count.   This is insufficient to establish personal jurisdiction over Defendant Koebrick as to Count III, and this claim against him should also be dismissed.

Count IV, defamation and slander, again alleges that "Defendants" (without specifying which) "have made disparaging oral statements about Plaintiffs' business to many vendors and customers."   *Id.* at 24.   But no specific statements are identified, and Plaintiffs have not asserted how Koebrick contributed to this claim in his individual capacity.   Plaintiffs likewise fail to articulate any nexus between this alleged conduct and the forum State.   This is insufficient to establish personal jurisdiction.

Counts V and VI, fraud and fraudulent inducement, are likewise insufficient to sustain Plaintiffs' burden of establishing personal jurisdiction over Defendant Koebrick.   In both Counts, Plaintiffs allege that "Defendants" (without specifying

which) fraudulently induced Plaintiffs GTS and Mackey to spend money and
resources to expand operations from Hancock County into other markets.    *See id.*
at 25 ("Plaintiffs GTS and Mackey would not have expended monies to expand their
operations from the Hancock County Warehouse into other markets had they
known that Defendants were stealing inventory."); *id.* at 32 ("Defendants
fraudulently induced Plaintiffs GTS and Mackey to expend monies and expand
operations from their Hancock County Warehouse into other markets, all while
diverting and stealing Bisley's inventory from the Hancock County Warehouse.").
Although the Complaint [1-1] does not specify which Defendant engaged in this
conduct, the Court must consider whether these allegations of fraud are connected
to any of the meetings Defendant Koebrick had with GTS and Mackey in the State
of Mississippi, which the Court discussed *supra*.    *See* Compl. [1-1] at 5-6.    Upon
careful review, Plaintiffs have not adequately alleged that this fraudulent conduct
arose out of or was connected to Koebrick's meetings in Mississippi.

As discussed previously, the Complaint [1-1] alleges that in 2019 Koebrick
met with Plaintiffs GTS and Mackey in Mississippi and, "[p]er the offer, Plaintiffs
GTS and Mackey would perform all needed services for Defendants and/or Bisley
beyond what they were already performing."    *Id.* at 6.    Plaintiffs further assert
that two years later, in 2021, "Defendants asked Plaintiffs GTS and Mackey to open
operations in Houston, Texas."    *Id.* at 7.    Given this two-year delay between
Koebrick's meetings in Mississippi and the assertions that unspecified "Defendants"
induced Plaintiffs to open operations in Texas, Plaintiffs have not sufficiently

14

connected or pled how the alleged fraudulent behavior arose out of or was related to Koebrick's contacts with Mississippi.   And all of the other allegations in Count V and Count VI are made against "Defendants" collectively—no individual conduct is pled.   This is insufficient to confer specific personal jurisdiction over Koebrick with regard to Counts V and VI, and these claims should be dismissed against him without prejudice.

Counts VII, VIII, and IX should also be dismissed against Koebrick for lack of personal jurisdiction because none of them allege any individual conduct at all by Koebrick or reveal any nexus between any of his conduct and Mississippi.   Count VII, civil conspiracy, alleges that "Defendants" (without specifying which) conspired to steal Plaintiffs' inventory and interfere with their business in various ways.   *See id.* at 33.   Count VII, breach of fiduciary duty, alleges that "Defendants owed a fiduciary duty to Plaintiffs," *id.* at 34, and breached that duty by, among other things, sharing confidential information, making false representations to Plaintiffs, diverting business from Plaintiffs, and causing Plaintiffs to pay inflated commission rates, *id.*   Count IX, unjust enrichment, alleges that "[b]enefits have been conferred upon Defendants by fraud, duress, and undue advantage."   *Id.* at 35.   As stated, none of these Counts identify any individual conduct by Defendant Koebrick.   That is insufficient to establish specific personal jurisdiction over him.

Finally, the Court considers an additional allegation—one that appears throughout the Complaint—that "Defendants" stole inventory from GTS's Hancock County Warehouse.   *See, e.g., id.* at 25 ("Defendants . . . were conspiring to steal,

15

and stealing, inventory from the Hancock County warehouse and the Houston Warehouse . . . ."); *id.* at 30 ("Bisley employees were acting as a double agents [sic] and Defendants were stealing inventory from Plaintiffs GTS and Mackey's Hancock County Warehouse and Houston Warehouse . . . ."); *id.* at 31 ("Defendants repeatedly and intentionally stole inventory from the Hancock County Warehouse and Houston Warehouse . . . ."); *id.* at 33 ("Among other things, Defendants . . . stole inventory from the Hancock County Warehouse and Houston Warehouse; and sold inventory off the books."); *id.* at 35 ("Defendants stole inventory from Plaintiffs GTS and Mackey's warehouses."). Once again, each of these allegations is made against "Defendants" collectively, without specifying who did what or what role, if any, Koebrick himself played in this alleged theft. Nor do Plaintiffs offer any explanation about how this theft arose out of or related to any contacts Koebrick may have had with the forum State. This is insufficient to confer personal jurisdiction over Koebrick.

B.    <u>Defendants' Motions to Dismiss for Failure to State a Claim and for Improper Venue</u>

1.    <u>Relevant Legal Authority</u>

Defendant ASG argues that the Complaint [1-1] should be dismissed because, among other things, it constitutes a shotgun pleading. *See* Mem. [6] at 11-12. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a

16

motion to dismiss filed pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (quotation omitted); *see also Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). A claim does not need detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014) (citations omitted), a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) ("Rule 9(b), in turn, demands 'the who, what, when, and where [to] be laid out *before* access to the discovery process is granted.'" (emphasis in original) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997))). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

2. <u>Analysis</u>

As the Court has mentioned, the vast majority of the allegations in the

Complaint [1-1] are raised against "Defendants" collectively, without differentiating which Defendant committed which acts. This renders the Complaint [1-1] a "shotgun pleading," in that it contains "causes of action which are sweepingly alleged against 'Defendants,' either in whole or in part," *Lightheart v. Salvation Army*, No. 3:23-cv-365, 2024 WL 4045473, at *2 (S.D. Miss. Sept. 4, 2024) (quotation omitted), and because its allegations "generally fail to state which Defendants are implicated in which causes of action and via what specifically alleged conduct, rendering the Court [] unable to assess the how, what or when, as it pertains to each individual Defendant and separate cause of action," *id.* (quotation omitted); *see also Jones v. Grapeland Indep. Sch. Dist.*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) ("A 'shotgun pleading' is a pleading with 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims is brought against.'") (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (identifying four types of shotgun pleadings and explaining that such pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests")).

Nearly every allegation in the Complaint [1-1] is lodged against "Defendants" collectively, without specifying which Defendant engaged in which activity, or which Defendant is responsible for which acts or omissions. *See, e.g.*, Compl. [1-1] at 19 ("Defendants are trying to drive Bisley out of business . . . ."); *id.* at 23 ("Defendants intercepted and diverted Plaintiff Buckley's customers . . . ."); *id.* at 24 ("Defendants

18

have made disparaging oral statements about Plaintiffs' business to many vendors
and customers."); *id.* at 25 ("Defendants defrauded Plaintiffs . . . ."); *id.* at 31
("Defendants repeatedly and intentionally stole inventory from the Hancock County
Warehouse . . . ."); *id.* at 33 ("Defendants agreed to take Plaintiff Buckley's current
and potential business . . . ."); *id.* at 34 ("Defendants owed a fiduciary duty to
Plaintiffs."); *id.* at 35 ("Defendants have been unjustly enriched at the expense of
Plaintiffs.").   Nor does the Complaint [1-1] offer many facts about what actually
transpired—or when, or where.   *See, e.g.*, *id.* at 24 ("Defendants have made
disparaging oral statements about Plaintiffs' business to many vendors and
customers.").

    Due to these deficiencies, the Complaint [1-1] "fail[s] . . . to give the
defendants adequate notice of the claims against them and the grounds upon which
each claim rests."   *Weiland*, 792 F.3d at 1323.   This is insufficient under Rule
8(a)(2), and, as to the claims for fraud, woefully inadequate under Rule 9(b).   *See*
*Twombly*, 550 U.S. at 555 (explaining that pleadings must "give the defendant fair
notice of what the claim . . . is and the grounds upon which it rests[.]" (quotations
omitted)); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or mistake.").   For these
reasons, and because the issues as against Defendant ASG do not implicate
jurisdictional questions, the Court will grant Defendants' request to dismiss the
Complaint [1-1] for failure to state a claim, but it will permit Plaintiffs leave to file
an amended complaint as against Defendant ASG Chemical Holdings, LLC only,

within twenty-one days of the date of this Order.[3]   Should Plaintiffs elect not to file

an amended complaint, the Court will enter a final judgment of dismissal.

### III.   CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants

Claudio Manissero and Jeff Koebrick's Motion [5] to Dismiss for Lack of Personal

Jurisdiction and all Defendants' Motion to Dismiss for Improper Venue and Failure

to State a Claim is **GRANTED**, and all claims against Defendants Claudio

Manissero and Jeff Koebrick are **DISMISSED WITHOUT PREJUDICE** for lack

of personal jurisdiction.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants'

Motion to Dismiss for Failure to State a Claim is **GRANTED.**   Plaintiffs shall have

twenty-one days from the date of this Order to file an amended complaint against

the remaining Defendant, ASG Chemical Holdings, LLC, that does not constitute a

shotgun pleading and cures the deficiencies the Court has identified in the original

Complaint [1-1].   Should Plaintiffs elect not to file an amended complaint by that

deadline, the Court will enter a final judgment of dismissal.

**SO ORDERED**, this the 18th day of June, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the Court will grant Plaintiffs leave to file an amended complaint, it need not address the issue of venue at this time.   Should Plaintiffs file an amended complaint, Defendant ASG may reurge its request to transfer venue.