## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | |
|---|---|
| **GOODNIGHT TERMINAL**<br>**SERVICES, INC., GARY MACKEY,**<br>**and WILLIAM BUCKLEY** | **PLAINTIFFS** |
| **v.** | **Civil No. 1:24-cv-306-HSO-BWR** |
| **ASG CHEMICAL HOLDINGS, LLC**<br>**A/K/A ASG CHEMIE** | **DEFENDANT** |

## <ins>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE DEFENDANT ASG CHEMICAL HOLDINGS, LLC'S MOTION [26] TO DISMISS FOR FAILURE TO STATE A CLAIM</ins>

In this business dispute, Defendant ASG Chemical Holdings, LLC, seeks to dismiss the four remaining claims in Plaintiffs Goodnight Terminal Services, Inc., Gary Mackey, and William Buckley's First Amended Complaint [24] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Mot. [26]; Mem. [27].  Those claims are for: tortious interference with contract and business relations (Count I); fraud and fraudulent inducement (Count II); breach of fiduciary duty (Count III); and unjust enrichment (Count IV).  *See* Am. Compl. [24] at 15-22.  Defendant also argues that Plaintiffs lack prudential standing to maintain their claims.  *See* Mot. [26].

Because Plaintiffs have not adequately alleged facts plausibly entitling them to relief as to Counts II, III, and IV, those claims should be dismissed with prejudice for failure to state a claim.  Defendant's Motion [26] will be denied without

prejudice to the extent it seeks to dismiss Count I, but because Count I fails to comply with Federal Rules of Civil Procedure 8, 10, and 12, it will be dismissed without prejudice.  Plaintiff will be granted leave to amend only to correct the deficiencies in Count I, following which Defendant may renew its Motion if it chooses to do so.

## I.  BACKGROUND

At the center of this dispute is the failed business relationship between Plaintiffs Goodnight Terminal Services, Inc., ("GTS"), a Mississippi corporation that provides a number of transloading and distribution services, Gary Mackey ("Mackey"), the co-owner of GTS, William Buckley ("Buckley"), the General Manager of Bisley International, LLC ("Bisley"), a material supply company and non-party to this suit, and Defendant ASG Chemical Holdings, LLC a/k/a ASG Chemie ("ASG" or "Defendant"), a limited liability company that appears to provide consulting and marketing services.  *See* Am. Compl. [24].  This failed business relationship has spawned extensive litigation in federal courts in Mississippi and Texas.  *See, e.g.*, *United States, ex rel ASG Chemical Holdings, LLC v. Bisley International, LLC, et al.*, 4:25-CV-01966 (S.D. Tex.); *ASG Chemical Holdings, LLC v. Bisley International, LLC, et al.*, 4:23-CV-04333 (S.D. Tex.); *Ward v. Bisley International, LLC, et al.*, 4:24-CV-03283 (S.D. Tex.).

According to Plaintiffs, non-party Bisley desired to develop markets for its products in the Americas.  *Id.* at 4.  To do this, Bisley entered into a Marketing Cooperation Agreement [24-1] with ASG in November 2019.  Dkt. [24-1].  Shortly

after entering into that agreement, ASG—purporting to work on behalf of Bisley—proposed a "partnership" to GTS and Mackey, who provide "transloading, warehousing, liquid bulk services, dry bulk services, blending, logistics and special freight services, and rail car cleaning and repairs," from its hub at a warehouse in Hancock County, Mississippi.  Am. Compl. [24] at 4-5.  GTS and Mackey accepted the opportunity and agreed to perform trucking and other distribution serves for "ASG/Bisley," *id.* at 5, beginning "GTS's business relations with ASG/Bisley," *id.*

About a year into this arrangement, ASG allegedly approached GTS with a different opportunity: GTS and Mackey would provide "all additional services required by ASG/Bisley . . . beyond those they were already performing," *id.*, and in exchange, GTS and Mackey would pay a "kickback in the form of a 'broker fee' to ASG and to [Ken] Pryde [Bisley's Operations VP]," *id.*  Despite GTS and Mackey's refusal, ASG allegedly continued to solicit "kickbacks" from GTS.  *Id.* at 6.  Nonetheless, the parties' business relationship continued as before: "ASG/Bisley would routinely direct and facilitate shipments to the Hancock County Warehouse, with Plaintiffs GTS and Mackey responsible for the subsequent terminal services." *Id.*

In February 2022, "Bisley and ASG entered a new, but identical, Marketing Cooperation Agreement."  *Id.* at 7; *see* Doc. [24-2] (Second Marketing Cooperation Agreement).  Plaintiffs claim that after Bisley and ASG entered into the new agreement, "ASG asked Mackey to open GTS operations in Houston, Texas," and promised that "if Mackey opened a GTS warehouse in Houston, they [Plaintiffs GTS

and Mackey] would receive *all* business that moved through ASG, including Bisley's." Am. Compl. [24] at 7 (alterations and emphasis in original). GTS and Mackey agreed to expand their operation into Texas, allegedly incurring significant costs in the process. *Id.*

Next, Plaintiffs allege that, at some unspecified time, "ASG began paying Bisley employees to act against Bisley's—and by extension, Plaintiffs'—interests."[1] *Id.* at 9. Though they do not know when this "scheme" began, Plaintiffs assert it was "fully underway by at least February 1, 2022," and that "Pryde [Bisley's Operations VP] was on board by then." *Id.* at 10. The Amended Complaint [24] asserts that, on February 1, 2022, Pryde—acting without authority—emailed ASG a document releasing ASG from its non-compete agreement with Bisley. *Id.* In January 2023, Pryde allegedly informed Mackey that he was leaving Bisley to spend more time with his family, *id.* at 10, but Pryde actually accepted a job with ASG, *id.* at 11.

Also in early 2023, after Pryde resigned from Bisley, Plaintiff Buckley interviewed and accepted a job at Bisley. *Id.* Buckley claims that ASG interviewed him for the Bisley position and represented that "ASG served as a contract sales and marketing arm of Bisley." *Id.* Plaintiffs allege that ASG "offered to set up a separate income stream for Buckley by selling chemical products in the coatings and construction agency, through ASG." *Id.* According to Plaintiffs, this is when they learned for the first time—despite Pryde's email on February 1, 2022, releasing

---

[1] It is unclear from the allegations in the Amended Complaint [24] how exactly this was against each Plaintiff's interests.

ASG from the non-compete agreement—that ASG was competing with Bisley.  *Id.*
Around this time, Buckley apparently learned that "certain Bisley employees and
Bisley suppliers were being compensated by ASG, without Bisley's knowledge or
consent."  *Id.*

Mackey asserts that, soon after, he met with Claudio Manissero
("Manissero"), who is apparently an employee of ASG, though his exact role is not
clear.  *See* Am. Compl. [24] at 12; *see also* Mem. Op. & Ord. [21] at 2.  At this
meeting, Manissero revealed that "multiple Bisley employees were also working as
double agents for ASG," Am. Compl. [24] at 12, and he forecasted that Bisley would
soon be out of business, *id.*

Plaintiffs claim that, at this point, ASG told Buckley's customers that Bisley
was going out of business.  *Id.*  Despite this, ASG allegedly "requested confidential
formulations and cost information from Buckley," which Plaintiffs claim ASG
wanted so ASG could make the formulations and sell to customers itself.  *Id.*
Buckley reportedly declined, explaining that this would be "outside the ASG/Bisley
relationship," leading to an "unhinged rant" by [Jeff] Koebrick, an ASG employee.
*Id.*  After this, ASG employees allegedly "began 'poisoning the well' for Plaintiffs
with Bisley's CEO," by claiming that "Buckley was not working or communicating
with ASG," statements that Plaintiffs claim negatively impacted Buckley's
employment relationship with Bisley.  *Id.* at 13-14.  Finally, Plaintiffs allege ASG
"has been interfering with Plaintiffs' customers," and that ASG terminated the
"ASG/Bisley agreement."  *Id.* at 14.

Proceeding under diversity jurisdiction, Plaintiffs brought this suit in October 2024, advancing eight state-law claims against ASG and two individual defendants. *See* Compl. [1].  The Court dismissed the individual defendants for lack of personal jurisdiction and dismissed Plaintiffs' claims under Rule 12(b)(6), because, among other things, the Complaint [1] constituted a shotgun pleading.  *See* Mem. Op. & Ord. [21].  Plaintiffs were permitted to file an Amended Complaint [24] to cure these deficiencies, and on July 17, 2025, they filed the operative Amended Complaint [24], advancing the following four causes of action against ASG: (1) Tortious Interrereference with Contract and Business Relations (Count I); (2) "Fraud/Fraudulent Inducement" (Count II); (3) Breach of Fiduciary Duty (Count III); and (4) Unjust Enrichment (Count IV).  *See* Am. Compl. [24] at 15-22. Defendant again seeks dismissal under Rule 12(b)(6), and on grounds that Plaintiffs lack prudential standing to maintain their claims against ASG.  *See* Mot. [26]; Mem. [27]

## II. <u>DISCUSSION</u>

A.    <u>Prudential Standing</u>

Standing contains two strands: "Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (cleaned up).  A plaintiff must satisfy both to have standing.  *See NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025).  The parties do not challenge Article III standing, and the Court is satisfied it exists here.  Instead, ASG believes that Plaintiffs lack prudential

6

standing on grounds that they are attempting to assert the rights of a third party—

Bisley.  *See* Mem. [27] at 22.

The Supreme Court has held that the issue of prudential standing "is in

reality tied to a particular statute."  *Bank of America Corp. v. City of Miami, Fla.*,

581 U.S. 189, 196.  It explained

> [t]he question is whether the statute grants the plaintiff the cause of
> action he asserts. In answering that question, we presume that a statute
> ordinarily provides a cause of action only to plaintiffs whose interests
> fall within a zone of interests protected by the law invoked.

*Id.* at 196-97 (internal quotation marks omitted).  But a plaintiff may assert the

rights of another if: "(1) [] the party asserting the right has a close relationship with

the person who possesses the right, and (2) there is a hinderance to the possessor's

ability to protect his own interests."  *NetChoice*, 134 F.4th at 805 (quotation marks

and citation omitted).

Here, prudential standing is not implicated because, at least at this stage,

each Plaintiff appears to be asserting their own rights.  Plaintiffs GTS and Mackey

seek to recover—at least in part—on grounds that ASG allegedly moved inventory

from their Hancock County Warehouse, causing them harm.  Am. Compl. [24] at 7.

Both GTS and Mackey also allege reliance on ASG's statements, *id.,* and tortious

interference with contracts they had in place with third parties, *id.* at 17.  Turning

to Plaintiff Buckley, he alleges lost commissions from ASG's interference with

Bisley, *id.* at 16-17, and that his business reputation was harmed by statements

ASG made to prospective business partners, *id.* at 13-14.  Although these facts and

causes of action are closely related to the other cases in the Bisley and ASG saga,

and certainly implicate Bisley's rights, at this stage it appears that Plaintiffs are also attempting to assert their own rights.

B.    <u>ASG's Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted); *see also Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). A claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citation omitted), but a claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

1.    <u>Tortious Interference with Contract and Business Relations (Count I)</u>

Mississippi recognizes actions for both tortious interference with business relations and tortious interference with contract.  Although the Amended Complaint [24] makes no effort to distinguish these claims, the Mississippi Supreme Court has made clear that "tortious interference with the performance of contract differs from tortious interference with business relations."  *Gulf Coast Hospice, LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (Miss. 2019).  It has explained wrongful interference with contract in this way:

> An action for interference with contract will ordinarily lie when a defendant maliciously interferes with a valid and enforceable contract, thereby causing one party not to perform and resulting in injury to the other contracting party. Malice in this context is the intentional doing of a harmful act without justification or excuse, or stated differently, the wilful violation of a known right.

*Id.* (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1268 (Miss. 1992)).  To establish a claim for tortious interference with a contract, the plaintiff must show

> (1) that the acts [of the defendant] were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) that actual damage and loss resulted.

*Id.* (quoting *Cenac*, 609 So. 2d at 1268-69).  Moreover, "[i]t must also be proven that the contract would have been performed but for the alleged interference."  *Id.*  It is well-established that "[a] party to a contract cannot be charged with interfering with his own contract."  *Id.* (citation omitted).  In other words, the "wrongdoer" must be a "stranger to the contract which was interfered with."  *Id.* (quotations

omitted).  So, any contracts ASG had with Plaintiffs would not support a tortious interference with contract claim.

The same four elements apply to tortious interference with business relations.  *See Hegman v. Adcock*, 377 So. 3d 1020, 1027 (Miss. Ct. App. 2024); *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998); *see also Seven Seas Techs., Inc. v. Infinite Computer Sols., Inc.*, 353 F. Supp. 3d 545, 549 (S.D. Miss. 2018).  But "[i]n contrast to tortious interference with contracts, tortious interference with business relations 'exists where one engages in some act with a malicious intent to interfere and injure the business of another, and the injury does in fact result.'"  *Gulf Coast Hospice, LLC*, 273 So. 3d at 747 (quoting *Cenac*, 609 So. 2d at 1271).

As with the original Complaint [1], the Amended Complaint [24] makes no attempt to distinguish these claims, nor does it address each separately.  Plaintiffs' arguments concerning tortious interference with contracts blend into the tortious interference with business claims, and in many respects, are indistinguishable.  *See, e.g.,* Am. Compl. [24] at 17-18 (discussing tortious interference with business relations in ¶ 95, tortious interference with contracts in ¶¶ 96, 97, tortious interference with business relations in ¶ 98, and tortious interference with contracts in ¶ 99).  These shortcomings make it difficult to determine which facts relate to which tort, and whether Plaintiffs have stated a claim for either.  As the Court has noted, these claims, while similar, are distinct, *see Gulf Coast Hospice*, 273 So. 3d at 745, and "*[e]ach claim* must include enough factual allegations 'to

raise a right to relief above the speculative level,'" *Magee v. Bank of New York Mellon Corp.*, 2:23-CV-64-KS-MTP, 2023 WL 4568780, at \*2 (S.D. Miss. July 17, 2023) (quoting *Twombly*, 550 U.S. at 555) (emphasis added); *see also Sudduth v. Lowndes Cnty., Mississippi*, No. 1:18-CV-51-SA-DAS, 2019 WL 982861, at \*5 (N.D. Miss. Feb. 28, 2015) (directing a plaintiff to file an amended complaint "to state more specifically (for each claim he alleges): (1) the nature of the claim, (2) the elements of the claim, and (3) the factual basis for each of the elements of the claim").

While Defendant seeks dismissal under Rule 12(b)(6) for failure to state a claim, the Court may raise the issue of shotgun pleadings sua sponte. *See Goode v. Early Encounters, Inc.*, 2:21-CV-152-RPM, 2022 WL 4488010, at \*5 (S.D. Miss. Sept. 27, 2022) ("[T]he Court raises the issue of shotgun pleadings *sua sponte*."). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both" are sometimes referred to as "shotgun pleadings." *McZeal v. Higher Educ. Loan Auth. of State of Missouri*, No. 4:25-CV-02343, 2025 WL 3167760, at \*2 (S.D. Tex. Nov. 13, 2025); *see also Lightheart v. Salvation Army*, No. 3:23-CV-365-HTW-LGI, 2024 WL 4045473, at \*2 (S.D. Miss. Sept. 4, 2024) (same). One type of shotgun pleading arises when "a complaint [] fails to separate into a different count each cause of action or claim for relief," in violation of Rule 10(b). *Id.* (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)); *see also Sudduth*, 2019 WL 982861, at \*4 (explaining that even if a plaintiff's complaint satisfies Rule 8, it runs afoul of

11

Rule 12 when "it fails to adequately link [Plaintiff's] causes of actions to their attendant factual predicates").

A pleading may also violate Rule 10(b) where the "theory and basis of counts are not distinguishable or if it is difficult to discern the legal claims asserted." *Desoto Grp., LLC v. Linetec Servs., LLC*, 339 F.R.D. 249, 251 (S.D. Miss. 2021) (citing *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011) (dismissing a claim where several were laid out in one count)); *see also Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1337 (M.D. Al. 2007) (finding a violation of Rule 10 where the complaint made "no attempt to identify which facts are relevant to which [] claims" and where "it [was] unclear whether facts exist which would support elements [of the claim]"). That is the case here. As outlined above, Plaintiffs advance two distinct causes of action in Count I, and the two theories of recovery blend into one another. *See* Mem. [27] at 10. This makes it difficult to determine which facts are relevant to which claims and whether facts exist that would support either. And "[o]rganization and brevity are especially important . . . where [Plaintiff's] causes of action center on when the contract was formed and the circumstances surrounding" the parties' commercial transactions. *Desoto Grp., LLC*, 339 F.R.D. at 251.

Because Plaintiffs' pleadings violate Rule 8 and Rule 10, the Court "may order parties to file an amended complaint in compliance with the rules, limit pleadings to a certain number of pages, or dismiss the complaint without prejudice." *Id.* (citing *Barnes v. Tumlinson*, 597 F. App'x 798, 798-99 (5th Cir. 2015), *Old Time*

*Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989), and *Gordon v. Green*, 602 F.2d 743, 746-47 (5th Cir. 1979)).  On the pleadings before it, neither the Court nor Defendant can effectively determine which claims Plaintiffs are pleading and whether they have adequately stated a claim for relief.  This is because the Amended Complaint [24] asserts distinct causes of action under the same Count and waffles between those causes of action and their purported supporting facts in subsequent paragraphs.  *See, e.g.*, Am. Compl. [24] at 17; *see also* Mem. [27] at 10 (noting that the theories bleed into each other).

Plaintiffs' Count I should be dismissed without prejudice for failure to comply with Rules 8 and 10, and Plaintiffs will be granted leave to file a second amended complaint to cure these deficiencies, should they wish to do so, within fourteen (14) days.  "Elements necessary for asserted causes of action should be provided and paired with corresponding facts," *Desoto Grp., LLC*, 339 F.R.D. at 252, and Plaintiffs are directed to address only the tortious interference with contract and tortious interference with business relations claims.  The contracts allegedly interfered with, along with the actual party to each contract, should be identified in order to provide Defendant with sufficient notice of the basis of those claims.  In short, "any further-amended pleadings should leave no mystery about which factual allegations support each legal cause of action."  *Alexander v. Global Tel Link Corp.*, No. 3:13-CV-560-LG-RHW, 2018 WL 8997439, at *1 (S.D. Miss. Dec. 18, 2018) (granting motion to dismiss).

2.    Fraud/Fraudulent Inducement (Count II)

Plaintiffs claim that ASG fraudulently induced them to enter into and expand their business relations with ASG.  *See* Resp. [30] at 11.  To state a claim for fraud or fraudulent inducement under Mississippi law, a plaintiff must establish the following nine elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Cascade Cap. Grp., LLC v. LivinGTSon Holdings, LLC*, No. 3:17-CV-952-LG-FKB, 2018 WL 4288706, at *2 (S.D. Miss. July 31, 2018) (citation omitted) (gathering cases).  State-law claims for fraud and fraudulent inducement are subject to the heightened pleading standard of Rule 9(b).  *Id.* (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) and *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016)).  And the Fifth Circuit

> interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue.

*Dorsey*, 540 F.3d at 339 (internal quotation marks and citations omitted).

As with the original Complaint [1], Plaintiffs have not satisfied Rule 9's heightened pleading standard because the Amended Complaint [24] does not identify the "who, what, when, where, and how" necessary to support a fraud-based claim.  *Dorsey*, 540 F.3d at 339.  At bottom, Plaintiffs generally allege that "ASG

and its members made representations that were false and material to the Plaintiffs' decision to enter into and expand their business relationship with ASG." Resp. [30] at 11. Those representations are not specified, and Plaintiffs are not synonyms for one another; each has their own identity. Rule 9's heightened pleading standard requires greater particularity. *See Dorsey*, 540 F.3d at 339.

Plaintiffs allege broadly that GTS and Mackey relied on false representations by ASG in deciding to expand their business to Houston, Texas. *See* Am. Compl. [24] at 7; Resp. [30] at 11 (same). ASG allegedly stated that "if Mackey opened a GTS warehouse in Houston, they [Plaintiffs GTS and Mackey] would receive *all* business that moved through ASG, including Bisley's." Am. Compl. [24] at 7 (alterations and emphasis in original); *see also* Resp. [30] at 11. This, Plaintiffs say, was a costly investment. *See* Am. Compl. [24] at 3. But GTS's and Mackey's allegations do not identify where or when the conversation took place, nor do they identify the speaker who participated in this conversation or who made the statements (beyond "ASG"). Rule 9 requires more; "the general allegation that 'Defendants' made such a misrepresentation" is insufficient "to satisfy the heightened pleading requirements of fraud." *Clark v. Song Health & Rehab of Columbia, LLC*, 2:16-CV-121-KS, 2017 WL 5885374, at *2 (S.D. Miss. Jan. 12, 2017).

Turning to Plaintiff Buckley, the Amended Complaint [24] also fails to meet Rule 9's heightened pleading standard. Plaintiffs claim that "Buckley would not have accepted the current compensation terms of his employment had he known

that his income would be significantly diminished." Am. Compl. [24] at 21.

Elsewhere, Buckley alleges that he "entered into an employment agreement with

Bisley" based on ASG's "representations," *id.* at 3, that he was "strongly

encouraged" to accept a position with ASG, *id.* at 11, and that ASG steered business

away from Bisley and Buckley, *id.* at 21. These allegations do not identify the

statements or "representations" that were false, how they were false, the identity of

the person who made the purportedly false statements, or when they were made.

Nor do they explain why it was reasonable to rely on statements by ASG as to the

nature of Buckley's prospective employment with Bisley. This is insufficient to

meet the heightened pleading standard of Rule 9. *See Dorsey*, 540 F.3d at 339

(stating that Rule 9 requires the "who, what, when, where, and how of the events at

issue").

In sum, despite being given an opportunity to amend, similar shotgun

deficiencies in the original Complaint [1] reappear in the Amended Complaint [24].

Plaintiffs' fraud and fraudulent inducement claims (Count II) should be dismissed

with prejudice because they do not comply with the heightened pleading standard

under Rule 9.

### 3.    Breach of Fiduciary Duty (Count III)

"Typically, a fiduciary relationship does not arise in an arm's length

agreement." *Hodges v. Allstate Ins. Co.*, No. 3:21-CV-536-KHJ-MTP, 2022 WL

766452, at *2 (S.D. Miss. Mar. 11, 2022) (gathering cases). Mississippi recognizes

that a contractual relationship may be converted into a fiduciary relationship if the

following four factors are present:

(1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 995 (Miss. 2006) (alterations in original); *see Hodges*, 2022 WL 766452, at *2 (quoting same). A fiduciary relationship may be implied, *see Lowery v. Guar. Bank & Tr. Co.*, 592 So. 2d 79, 83 (Miss. 1991), but "there must be evidence that both parties understood that a special trust and confidence was being reposed," *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 758 (Miss. 2004) (citing *Lowery*, 592 So. 2d at 84).

Plaintiffs allege that ASG owed them a fiduciary duty, *see* Am. Compl. [24] at 21, and they believe this fiduciary relationship arose through the parties' course of dealings, *see* Resp. [30] at 13-14. ASG contends that no fiduciary relationship existed because there was no formal contract between ASG and any Plaintiff, and Plaintiffs have failed to "allege any special relationship of trust and confidence that existed prior to and apart from the alleged agreements identified in this suit." Mem. [27] at 18.

Even viewing the facts in the light most favorable to Plaintiffs, the Amended Complaint [24] does not plausibly allege a special relationship or facts from which the Court could infer that a fiduciary duty arose during the parties' course of dealings. Plaintiffs contend that "ASG/Bisley" directed and facilitated the shipment of materials, while GTS and Mackey would handle the terminal services. Am. Compl. [24] at 6. Plaintiffs also claim that they relied on ASG's representations that GTS and Mackey "would receive all business that moved through ASG" if they

17

expanded to Houston, *id.* at 7; Resp. [30] at 14, and that "ASG/Bisley" exercised "dominion and control" over Plaintiffs because ASG directed shipments to the warehouse, Am. Compl. [24] at 6; Resp. [30] at 14.

But these allegations support the existence of a business relationship, not a fiduciary one. And Plaintiffs do not state any facts tending to establish that ASG understood that there was a relationship of special trust or confidence. *See generally* Am. Compl. [24]; *sell also Mabus*, 884 So. 2d at 758 ("[T]here must be evidence that both parties understood that a special trust and confidence was being reposed."). Nor have Plaintiffs stated any facts to plausibly allege that Defendant exercised dominion or control over them "in any sense more than is common in commercial transactions." *BC's Heating & Air and Sheet Metal Works, Inc. v. Vermeer Mfg.*, No. 2:12-CV-136-KS, 2012 WL 642304, at *4 (S.D. Miss. Feb. 27, 2012) (cleaned up); *see* Am. Compl. [24].

The Amended Complaint [24] asserts that "ASG/Bisley would routinely direct and facilitate shipments to the Hancock County Warehouse," Am. Compl. [24] at 6, and that Plaintiffs relied on ASG, but this is insufficient to plausibly allege dominion or control. Instead, these claims are more consistent with a routine arm's length business relationship: one party marketed and imported the material, the other distributed. *See id.* at 6. And Mississippi does not recognize a fiduciary relationship in arm's length transactions. *Hodges*, 2022 WL 766452, at *2 (gathering cases). GTS and Mackey may have trusted "ASG/Bisley." But "one does not typically enter into a contract with another person unless he or she has a degree

of trust or confidence in that person," and "without more, such a transaction amounts to merely a business relationship, and not a fiduciary relationship." *Robley*, 935 So. 2d at 995. Because Plaintiffs have not plausibly alleged that ASG owed them a fiduciary duty or exercised dominion or control over them, their breach of fiduciary duty claim should be dismissed.

4.    Unjust Enrichment (Count IV)

"A claim for unjust enrichment exists 'when one party has mistakenly paid another party.'" *Seven Seas*, 353 F. Supp. 3d at 545 (quoting *Willis v. Rehab Sols. PLLC*, 82 So. 3d 583, 588 (Miss. 2012)). "It 'applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id.* (quoting *Willis*, 82 So. 3d at 588).

Based on the Amended Complaint [24], it appears that there were at least two contracts (maybe others), one between ASG and Bisley for marketing, *see* Am. Compl. [24] at 2, 3, and one between GTS and Bisley, "under which GTS would perform terminal services for ASG/Bisley," *see id.* at 8. Plaintiffs broadly allege "[b]enefits have been conferred upon ASG. ASG has appreciated, accepted, and retained these benefits. It is inequitable for ASG to retain these benefits without the payment of value to Plaintiffs." Am. Compl. [24] at 22. These benefits are not apparent in the Amended Complaint [24]. According to Plaintiffs, "[b]y virtue of the parties' business relationship, GTS and Mackey shared 'confidential transportation, shipping, and/or important partner' information with ASG." Resp. [30] at 16. But

19

there's one problem: Plaintiffs did not allege this in the Amended Complaint [24],

nor do they identify where this quoted material comes from.  The allegations in the

Amended Complaint [24] are that

> ASG *requested* confidential formulations and cost information from
> Buckley ostensibly so ASG could make the formulations and sell to a
> customer . . . Buckley explained that this would be outside the
> ASG/Bisley relationship that Bisley has with ASG, and the meeting
> turned into an unhinged rant.

Am. Compl. [24] at 13 (emphasis added).  In other words, the Amended Complaint

[24] indicates that ASG *requested* but Plaintiff Buckley *refused* to turn over

confidential information—not that he turned it over and ASG profited from it.  And

nowhere do Plaintiffs allege that GTS and Mackey shared confidential information.

*See generally id.*  Nor do Plaintiffs state what information ASG retained or how it

benefited from the information.  *See Willis*, 82 So. 3d at 588.

Next, Plaintiffs say that ASG "stole from Buckley via diverting business from

Buckley and Bisley."  Resp. [30] at 16.  ASG allegedly did this when it

> intercepted and diverted leads for future sales of products that are the
> same or like *Bisley* products *listed in their agreements*, increased sales
> prices causing *Bisley* to pay inflated commission rates that exceeded the
> rates agreed *to in the Agreements* and stolen [sic] *Bisley's* inventory.
> ASG's acts, omissions, and Review and representations have also led to
> decreased commissions to *Buckley*.

Am. Compl. [24] at 16 (emphasis added); *see also* Resp. [30] at 16.  Buckley also

claims that when ASG made sales to Riteks, Bisley lost sales.  *See* Am. Compl. [24]

at 16.  And when *Bisley* lost sales, "Buckley lost commission and bonus" from sales

lost to ASG.  *Id.* (emphasis added).  But an unjust enrichment theory can only exist

where there is no contract, *see Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005),

20

and Buckley's unjust enrichment claim flows directly from ASG's alleged breach of the "agreements," resulting in lost commissions, Am. Compl. [24] at 16.  Buckley's allegations sound more in breach of contract and do not relate to some "mistaken payment," *see Willis*, 82 So. 3d at 558, or some improperly retained benefit, *see Desoto Grp., LLC v. Linetec Servs., LLC*, 3:20-CV-677-KHJ-LGI, 2022 WL 108614, at *3 (S.D. Miss. Jan. 11, 2022) (dismissing an unjust enrichment claim where the plaintiffs failed to demonstrate a "mistaken payment" occurred).  At most, Buckley might be considered a third-party beneficiary to the agreements, but in Mississippi, an incidental beneficiary "has no right against the contract promisor or promisee," *TLM Investments, LLC v. Yates*, 409 So. 3d 582, 588 (Miss. 2025), and there are no allegations that the ASG and Bisley agreements were entered into for Buckley's benefit, such that he could be considered an intended beneficiary, *see id.* at 587-88.

Lastly, and "most importantly," Resp. [30] at 16, are the allegations that "ASG moved all its inventory (and Bisley's) out of GTS's Hancock County Warehouse, and Houston," Am. Compl. [24] at 14.  But this claim is explicitly based on a contract between GTS and Bisley, and an unjust enrichment claim cannot exist where there was a contract.  *See Powell*, 912 So. 2d at 982.  Plaintiffs' unjust enrichment claim, as it relates to each individual plaintiff, is either based on allegations that were not pled or based on the downstream effects of ASG's purported breach of contract.  As such, Plaintiffs have not plausibly alleged an unjust enrichment claim.

III. <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant ASG Chemical Holdings, LLC's Motion [26] to Dismiss for Failure to State a Claim is **GRANTED** in part and **DENIED WITHOUT PREJUDICE** in part, in that Count I of the Amended Complaint [24] is dismissed **WITHOUT PREJUDICE** under Federal Rules of Civil Procedure 8, 10, 12, and Counts II, III, and IV of the Amended Complaint [24] are dismissed **WITH PREJUDICE** for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs shall have fourteen (14) days from the date of this Order to file a second amended complaint against Defendant, ASG Chemical Holdings, LLC, to cure the deficiencies identified by the Court. The Second Amended Complaint shall only address the tortious interference with contract and tortious interference with business relations claims. Moreover, it must comply with Rules 8 and 10, must plead the relevant facts as to each respective cause of action and contract, and must address the deficiencies identified in the Order. Finally, because the original Complaint [1] was thirty-eight pages long, and the Amended Complaint was twenty-four pages long, and because only two claims remain, the Second Amended Complaint should not

exceed twenty pages.  If Plaintiffs elect not to file a Second Amended Complaint by the Court's deadline, the Court will enter a Final Judgment of dismissal.

**SO ORDERED AND ADJUDGED**, this the 9th day of February, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE